**Cora TANNER, Administratrix of the Estate of Hudson Tanner, deceased,**
**Appellant,**
v.
**PENNSYLVANIA THRESHERMEN &**
**FARMERS' MUTUAL CASUALTY IN-**
**SURANCE COMPANY, Appellee.**
No. 12354.

United States Court of Appeals
Sixth Circuit.

Oct. 18, 1955.

Harry Berke, Chattanooga, Tenn., for appellant.

Paul Campbell, Chattanooga, Tenn., (Campbell & Campbell, Chattanooga, Tenn., on the brief), for appellee.

Before ALLEN, MARTIN and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

The appellant brought an action against Mike Zarzour and his brother in a Tennessee state court and recovered judgment for $11,000 damages for the death of her husband, who was killed by a Mercury automobile belonging to and being operated by Louis Zarzour, brother of Mike. To effectuate this award, she then brought suit in the state court against the appellee insurance company based upon an automobile liability policy issued by it to Mike Zarzour, covering a described 1949 Oldsmobile car.

This policy provided, *inter alia,* for the coverage of "an automobile not owned by the named insured while temporarily used as the substitute for the described automobile while withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." It contained the further provision: "This insuring agreement does not apply: * * * (2) to any automobile while used in the business or occupation of the named insured or spouse except a private passenger automobile operated or occupied by such named insured, spouse, chauffeur or servant." The policy limited the liability of the insurance company to $5,000 for injury to one person.

Upon the ground of diversity of citizenship, appellee removed the cause to the United States District Court where, at the trial upon conclusion of the introduction of appellant's proof, District Judge Darr directed a verdict in favor of the appellee insurer and filed a twelve-page typewritten opinion wherein he carefully summarized the facts and set forth his reasons for directing judgment for the defendant. His analysis of the facts is supported by the transcript of evidence, and will be briefly recapitulated.

The insured, Mike Zarzour, operated a cafe in Chattanooga, as likewise did his brother, Louis Zarzour, in another place in the same city. Mike's Oldsmobile, covered by the liability policy in issue, had been placed in a repair shop for minor repairs around six o'clock in the evening on the date of the accident. Mike's brother, Louis, with his own Mercury automobile had pushed the insured's car

to a garage some two blocks from Mike's restaurant. After driving Mike back to his restaurant, Louis turned the Mercury car over to Mike, who drove to a curb market to get some produce. Twenty or thirty minutes were thus consumed before Mike returned to his cafe and unloaded the produce. He then drove in the Mercury to get some change at a super-market; and, upon his return, was told by his wife that they did not have any beef. Mike asked Louis if the latter had any beef at his restaurant; and, when Louis responded that he had, Mike requested him to go in the Mercury car and bring some meat to him. Louis drove off in his own Mercury and, somewhere enroute, picked up his wife and children, who were riding with him when he collided with appellant's intestate. The accident occurred about 7:30 o'clock in the evening.

At the trial, Mike testified that Louis was not employed by him, or interested in the business which he operated, but accommodated him at times by staying at the restaurant when needed; and that he, in turn, did the same for Louis and for his sister, who also operated a similar business. He admitted that he had no interest in the automobile owned by Louis, but that he used it sometime and that Louis also used his car occasionally. Each thus accommodated the other. He swore that, on the evening of the accident, Louis was helping him out as a brother and that Louis could have gone with his Mercury car wherever he wanted to go; that he had no control over the automobile owned by Louis. It is true that, at one point in his testimony, Mike did say that, when his wife told him they did not have any beef, Louis was working behind the counter in Mike's restaurant; and that, observing that they were real busy and that he himself "knew bet-ter how to handle things," he had told Louis: "You go over to your place and get the meat and come back."

From consideration of Mike's entire testimony, we agree with the trial judge that it is obvious that the errand undertaken by Louis was "in the nature of a friendly or brotherly accommodation."

The judge commented in his opinion that diligent search had failed to reveal authoritative interpretation of any policy provision similar to that construed here. He construed the word "substitute car" to mean a car which was in the possession or under the control of the insured to the same extent and effect as the disabled car of the insured would have been except for its disablement. He pointed out that the Mercury belonging to Louis was not, at the time of the accident, in the possession or under the control of the insured; but that it was in the sole possession and control of Louis and being operated by him. The conclusion was reached, therefore, that the liability policy issued to Mike Zarzour, covering his 1949 Oldsmobile, did not embrace liability for the injury and death of appellant's intestate occasioned by Louis Zarzour's operation of his own automobile.

We think the district judge's conclusion was a correct interpretation of the policy. In our judgment, there was no issue of fact for presentation to the jury, as there was no real conflict in the evidence, and the interpretation of the policy was a matter of law. In view of our conclusion, we consider it unnecessary to discuss or decide the issue of whether the policy was complied with in respect of appropriate notice of the accident and notice of the suit.

The judgment of the district court is affirmed.