# 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡

## Frank T. Drewry, Et Al. v. State Farm Mutual Automobile Insurance Company.

March 4, 1963.

Record No. 5546.

Present, All the Justices.

The opinion states the case.

*Paul Whitehead* and *J. Frank Shepherd*, for the plaintiffs in error.

*J. B. Browder (Henry M. Sackett, Jr.; James W. Morris, III; Browder, Russell and Morris; Williams, Robertson and Sackett*, on brief), for the defendant in error.

CARRICO, J., delivered the opinion of the court.

Frank T. Drewry, Sarah D. Perkins and Robert C. Drewry, administrator of the estate of Viola Layne Drewry, deceased, the plaintiffs, filed a motion for declaratory judgment (Code, § 8-578) against State Farm Mutual Automobile Insurance Company, the defendant. The motion sought a determination of the extent of the defendant's liability to the plaintiffs under the uninsured motorist provision of an automobile insurance policy issued by the defendant to Frank T. Drewry.

The plaintiffs alleged in their motion that the defendant was indebted to them in the sum of $58,000.00, the aggregate amount of three judgments which they had recovered against the operators of two uninsured vehicles. The defendant filed an answer alleging that $30,000.00 was the limit of its liability to the plaintiffs.

The trial judge heard the case upon a stipulation of facts and ruled that the defendant was liable to the plaintiffs for only $30,000.00, plus interest and costs. The plaintiffs are here on a writ of error to a final order embodying that ruling.

The stipulation shows that on August 28, 1959, Sarah D. Perkins and Viola Layne Drewry were passengers in an automobile which was owned and being operated by Frank T. Drewry in Albemarle County. Their vehicle was struck from behind by an automobile driven by Deane Shifflett and by one operated by Claude William Shifflett, who were engaged in a race upon the highway. The impacts of the two Shifflett vehicles with the Drewry automobile occurred within "just a split second" of each other. As a result, Viola

Layne Drewry was killed and Sarah D. Perkins and Frank T. Drewry were seriously injured.

At the time of the collision, there was in effect on the Drewry automobile a family automobile liability insurance policy, issued to Frank T. Drewry by the defendant. The policy contained a provision, for which Drewry paid an additional premium of $6.00 per year, affording the "persons insured" therein uninsured motorist coverage, within limits, as shown by the stipulation, of $15,000.00 for "bodily injury to each person" and $30,000.00 "because of bodily injuries sustained by two or more persons as a result of any one accident."

Neither of the Shiffletts had insurance on his vehicle. However, each had paid to the state the $15.00 (now $20.00) uninsured motorist fee when he secured his license plates. (Code, § 46.1-167.1).

The stipulation further shows that in separate actions filed against the Shiffletts, Frank T. Drewry secured a judgment in the sum of $21,000.00, Sarah D. Perkins obtained a judgment for $15,000.00 and the administrator of Viola Layne Drewry was awarded $22,000.00, or an aggregate amount of $58,000.00. The defendant was served with a copy of the motion for judgment in each action, pursuant to the provisions of Code, § 38.1-381, the uninsured motorist statute.

The stipulation also discloses that before the judgments against the Shiffletts became final, the defendant instituted an action of interpleader and for declaratory judgment against the plaintiffs in the United States District Court for the Western District of Virginia, Lynchburg Division. At the same time, the defendant paid into the registry of that court the sum of $30,000.00, together with costs and accrued interest in the amount of $400.00. The defendant conceded that it was liable to the plaintiffs for the amount paid into the registry, but sought, in that proceeding, an adjudication that the sum so paid was the limit of its liability.

After the plaintiffs had filed their pleadings, the District Judge granted the defendant's motion for summary judgment and, in a written opinion, ruled that the defendant was not liable to the plaintiffs in excess of the sum paid into the court. *State Farm Mutual Automobile Insurance Co.* v. *Drewry,* 191 Fed. Supp. 852.

The plaintiffs perfected an appeal from the ruling of the District Court to the United States Court of Appeals for the Fourth Circuit. The latter court withheld its decision in the case to permit the plaintiffs to seek a ruling in the courts of this Commonwealth. The present litigation ensued.

It is the plaintiffs' position that the defendant is liable to them for

the full amount of their judgments, or $58,000.00, because their damages resulted from a collision with two uninsured vehicles and they are entitled to $30,000.00 coverage as to each such vehicle, or a total possible coverage of $60,000.00.

The defendant takes the position, on the other hand, that the plaintiffs' damages were caused by only one accident and that, under the terms of the policy, $30,000.00 is the limit which two or more persons may recover for any one accident.

The sole question to be determined is whether the coverage available to the plaintiffs is $60,000.00, the aggregate for two uninsured vehicles, or $30,000.00, the aggregate for one accident.

The plaintiffs concede that, although their collision was with two vehicles, there was only one accident involved. They also concede that the terms of the policy would limit their recovery to $30,000.00. They say, however, in their first contention, that Code, § 38.1-381, the uninsured motorist statute, provides them with $60,000.00 coverage, that the policy is thus in conflict with the statute and must give way thereto.

In answering the plaintiffs' contention, it is necessary to examine the provisions of the statutes and the relevant terms of the policy involved.

We find in Code, § 38.1-381 (b) the nature of the coverage required by law:

"Nor shall any such policy or contract be so issued or delivered unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle. . . ."

We now turn to the policy to find the nature of the coverage therein specified:

"Insuring Agreements.

"*Damages for Bodily Injury and Property Damage Caused by Uninsured Automobiles.* To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of:

"(a) bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured;

\*          \*          \*          \*          \*          \*          \*

"caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile."

Thus, it is seen, the statute requires that coverage be provided to compensate the insured for damages which he shall be legally entitled to recover against the uninsured motorist. The policy provides exactly that coverage and there is, therefore, no conflict between the statute and the policy in this respect.

■ In the statutes, we find the limits of liability fixed by law. Code, § 38.1-381 (b) provides that uninsured motorist coverage shall be, "within limits which shall be no less than the requirements of § 46.1-1 (8), as amended from time to time, of the Code herein."

Code, § 46.1-1 (8) appears in Chapter 1, "Motor Vehicles, General Provisions," under the heading "Definitions," as follows:

"The following words and phrases when used in this title shall, for the purpose of this title have the meanings respectively ascribed to them in this section except in those instances where the context clearly indicates a different meaning:

"(8) 'Financial Responsibility'

"Ability to respond in damages for liability thereafter incurred arising out of the ownership, maintenance, use or operation of a motor vehicle, in the amount of $15,000.00 because of bodily injury to or death of any one person and, subject to such limit for one person, in the amount of $30,000.00 because of bodily injury to or death of two or more persons in any one accident. . . ."

Turning again to the policy, we find the limits of liability fixed therein:

"Conditions

"5. Limits of liability. (a) The limit of bodily injury liability stated in the schedule as applicable to 'each person' is the limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of such liability stated in the schedule as applicable to 'each accident' is the total limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident."

The limit of liability stated in the schedule as applicable to "each person" is $15,000.00, and as applicable to "each accident" is $30,000.00.

Thus, it is seen, the law requires coverage within limits of not less than $15,000.00 for bodily injury to or death of one person and, subject to such limit, of $30,000.00 for bodily injury to or death of

two or more persons in any one accident. These are the same limits of liability afforded by the policy, albeit the amount provided by statute is the minimum coverage, whereas the amount provided by the policy is the maximum coverage. There is, therefore, no conflict between the statute and the policy in this respect.

But, the plaintiffs argue, the required coverage, within the limits fixed by the statute, was intended by the legislature to be available to an insured *as to each uninsured motorist* who causes the injury, although only one accident is involved.

The plaintiffs' contention in this respect might be valid if Code, § 38.1-381 (b) is read without regard to the language contained therein, "within limits which shall be no less than the requirements of § 46.1-1 (8)". If this latter language is ignored, then it might well be that coverage would be provided for an insured for all damages which he would be entitled to recover as the result of an accident, whether caused by one or by two or more uninsured vehicles. If this meaning is placed upon the statute, then the policy would be in conflict therewith and must give way thereto. *Scholz v. Standard, Etc., Co.*, 145 Va. 694, 704, 134 S. E. 728.

But the limiting words of the statute cannot be so easily ignored. They express the clear intention of the legislature that the amount of coverage provided need not be in such an amount as to compensate for all damages recovered, but only for those recovered by one person up to $15,000.00 and, subject to such limit, for those recovered by two or more persons up to $30,000.00 as the result of any one accident, regardless of how many uninsured motorists might cause one accident.

The plaintiffs also say that the language "ability to respond in damages," appearing in Code, § 46.1-1(8), as applied to the case before us, means the ability of each of the Shiffletts to respond in damages up to the fixed limits.

What the plaintiffs' contention reduces itself to is that Code, § 38.1-381 provides *each* uninsured motorist with liability coverage up to the statutory limits. That is the basis of their argument in their brief. There they assert, "The provisions of the statute are providing coverage requirements for the owner or operator of each uninsured motor vehicle involved in an accident with an insured automobile. This basic approach is the conflict which exists between the policy issued and the statute."

We have already expressly held to the contrary. Mr. Justice Snead, in *Horne v. Insurance Company*, 203 Va. 282, 285, 123 S. E. 2d 401, said:

". . . . It is not the purpose of the uninsured motorist law to provide coverage for the uninsured vehicle, but its object is to afford the insured additional protection in event of an accident. Here, [the uninsured motorist carrier] does not stand in the shoes of . . . the uninsured motorist. Its policy does not insure [the uninsured motorist] against liability. It insures [the insured] . . . against inadequate compensation."

Mr. Justice Spratley, in *Nationwide* v. *Harleysville Mutual*, 203 Va. 600, 603, 125 S. E. 2d 840, said:

"The intent of the General Assembly in enacting the 'Uninsured Motorist Act,' was to provide benefits and protection against the peril of injury by an uninsured motorist to an insured motorist, his family and permissive users of his vehicle. It was not enacted to provide insurance coverage upon each and every uninsured vehicle to everyone."

The intent of the legislature in so limiting the application of the act is founded in logic and reason. The legislation was enacted to correct the evil that arose because victims of uninsured negligent drivers were left without compensation for their damages. It was not designed to correct the fact that certain operators did not have insurance. Had that been the intent of the legislature, a plan of compulsory insurance for every vehicle could have been instituted.

To say that the legislation was designed to provide liability coverage for one who fails to secure insurance for himself would be to reward the indifferent and careless driver. It would permit him to secure such protection for only a portion of the cost which the diligent automobile owner has to pay. It would mean that the premium paid by an insured for uninsured motorist coverage would go to pay the cost of liability protection to the uninsured. Such a purpose cannot be attributed to the legislature.

The legislative intent is further expressed, in this respect, by the provision that the uninsured motorist carrier is subrogated to the rights of the insured, to whom a claim is paid, against the uninsured motorist to the extent of such payment. The liability of the uninsured tort feasor remains unaltered, therefore, notwithstanding the coverage provided an insured by the statute and his policy. Code, § 38.1-381 (f).

There is yet another, and highly persuasive answer to the plaintiffs' argument that the statute provides coverage to each uninsured motorist. That answer is found in the fact that the statute does not

extend its benefits to aid the uninsured motorist to recover compensation for damages caused by another uninsured motorist. The uninsured motorist fund is not available to him as a source of payment therefor and no insurance company is obligated to him in such a situation.

The plaintiffs also contend that to deny them full recovery would result in the unjust enrichment of the defendant. They assert, in this connection, that the defendant has received a premium from Frank T. Drewry for his uninsured motorist coverage and also has received a portion of the fee paid by each of the Shiffletts into the uninsured motorist fund of the state. Their argument seems to be that since the defendant has received premiums from more than one source it ought to be required to furnish more than one coverage.

We find nothing in the statutes to indicate that the uninsured motorist fee was intended to provide coverage for the uninsured or to make available to the insured a coverage in addition to that afforded by his own policy. To the contrary, the expressed intention of the legislature is that the uninsured motorist fee is to defray, at least in major part, the expense to the insured of the coverage provided to him.

Code, § 46.1-167.1 provides that, in addition to other fees required by law, every person registering an uninsured motor vehicle shall pay a fee of $15.00 (now $20.00). Section 46.1-167.6 provides that the fee so paid shall be held, in the state treasury, in the uninsured motorist fund. Section 12-65 provides that the fund shall be under the control of the State Corporation Commission.

Section 12-66 provides for the distribution of the fund annually by the Commission among the insurance companies writing liability insurance on motor vehicles registered in Virginia. Such distribution is made to each company in the proportion that its premium income for the basic uninsured motorist coverage bears to the total of such premium income from all such basic coverage written in the state, based upon such figures for the preceding year.

At the time of the accident in question, this section also provided that before the fund was distributed among the companies, the commission was first to fix the rate to be charged to policyholders for such coverage, without regard to the funds to be distributed, and then was to reduce such rate in proportion to the funds to be distributed. If the amount in the fund exceeded the amount necessary to cover the entire cost to the policyholders of such coverage, the balance of the fund was to be paid into the general fund of the state treasury.

The section also contained the following pertinent language:

". . . It is the intent of this section that each policyholder shall have the cost of such endorsement or provision reduced through such adjustment of rate, so far as possible out of the funds collected from uninsured motorists and distributed as provided herein, and that such reduction in the cost of such endorsement is intended to serve as an added inducement to the uninsured motorist to procure insurance coverage. . ."

Thus, a portion of the uninsured motorist fees paid by the Shiffletts was distributed to the defendant. In turn, a portion of such distribution was for the purpose of reducing the expense to Drewry of the uninsured motorist coverage provided to him, the balance of such expense being borne by him. The payments received by the defendant, although originating from different sources, all went to pay a specific premium on a particular policy to achieve a single purpose —to protect Drewry, his family and permissive users of his automobile, within the fixed limits of liability, from the peril arising from the fact that the Shiffletts, and other motorists, were uninsured.

There are other reasons why the payment of the uninsured motorist fee does not·have the effect asserted by the plaintiffs. First, the insured is entitled to the protection required by the statute and provided by the policy, even though his damages are caused by an uninsured motorist who has not paid the fee. Code, § 38.1-381 (c). Second, the payment of the fee does not relieve the payor of proving that he has liability insurance, or other forms of financial responsibility, in those instances where such proof is required by the Safety Responsibility Act of the Motor Vehicle Code. (Code, § 46.1-467, et seq.)

The plaintiffs finally say that the provisions of the amendment to paragraph (h) of Code, § 38.1-381 prohibit the issuance of a policy of automobile liability insurance, "which would limit the amount of coverage under the uninsured motorist statute."

Whether or not this amendment has the effect asserted by the plaintiffs we need not decide because the amendment was not adopted until the 1960 session of the General Assembly, after the accident in question had occurred.

We agree with the ruling of the trial judge that, "the sum of $30,400.00 paid by the defendant . . . into the registry of the United States District Court . . . is the extent of the defendant's liability to the plaintiff in this case." Accordingly, his judgment will be

*Affirmed.*