LUMBERMENS MUTUAL CASUALTY COMPANY and Ray Dalton, Appellants,

v.

HARLEYSVILLE MUTUAL CASUALTY COMPANY and State Farm Mutual Automobile Insurance Company, Appellees.

No. 9985.

United States Court of Appeals Fourth Circuit.

Argued Nov. 2, 1965.

Decided Sept. 22, 1966.

Boreman, Circuit Judge, dissented in part.

Philip M. Sadler, Pulaski, Va. (Gilmer, Sadler, Ingram, Thomas & Sutherland, Pulaski, Va., on brief), for appellant, Lumbermens Mut. Cas. Co.

John B. Spiers, Jr., Radford, Va. (Spiers & Spiers, Radford, Va., on brief), for appellant, Ray Dalton.

Richard C. Rakes, Roanoke, Va. (Gentry, Locke & Rakes, Roanoke, Va., on brief), for appellee, Harleysville Mut. Cas. Co.

Stuart B. Campbell, Jr., Wytheville, Va. (Campbell & Campbell, Wytheville, Va., on brief), for appellee State Farm Mut. Automobile Ins. Co.

Before BOREMAN, BRYAN and BELL, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge:

Holding a State court, automobile-injury judgment for $25,000, Gertrude

Sutphin Southern sought payment in the District Court from three insurance companies as the tortfeasors' insurers. Lumbermens Mutual Casualty Company, insurer of one of the tortfeasors, was ordered to pay the entire judgment and was denied contribution from the other two insurers. Ray Dalton, another tortfeasor who had been impleaded by Lumbermens for contribution aiso, was held unprotected by any insurer. Lumbermens and Ray Dalton appeal.

We hold that appellee State Farm Mutual Automobile Insurance Company insured Ray Dalton and, subject to its defenses of noncompliance by the insured with the policy requirements, that Lumbermens may recover of State Farm for contribution.

There is little difference between the parties on the facts. So far as immediately pertinent they stipulated, after all the testimony was taken, as follows:

"On September 1, 1959, William Matthew Dalton was the owner of a 1954 Ford automobile and had in effect at that time an automobile liability insurance policy with the State Farm Mutual Automobile Insurance Company. On that same date, Ray Dalton [William's son] was the owner of a 1955 Ford automobile and had no liability insurance in effect on his automobile * * *.

"On September 1, 1959, Ray Dalton was unmarried and was living at the home of his father in the Hiwassee section of Pulaski County, Virginia, and thus was a member of his father's household. William Matthew Dalton and Ray Dalton were, at the time, employed at the Burlington Mills plant near Dublin, Virginia and had been for some months prior to September 1, 1959. William Matthew Dalton and Ray Dalton drove back and forth to work at the Burlington Mills plant from their home in the Hiwassee section. Some months prior to September 1, 1959, *William Matthew Dalton had agreed* to transport certain other persons from that section of Pulaski County to work at the Burlington Mills plant. These persons worked on the same shift as William Matthew Dalton and Ray Dalton. At [sic] was the custom in that neighborhood, these persons *agreed to pay and did pay, William Matthew Dalton* a certain amount per day to ride back and forth to work.

"On the morning of September 1, 1959, Ray Dalton and William Matthew Dalton prepared to leave their home and pick up the passengers to proceed to the Burlington Mills plant, William Matthew Dalton attempted to start his car to make the trip. However, for some reason his car would not start and *William Matthew Dalton* suggested that *Ray Dalton would have to take his car to work and pick up these passengers.* Why Matthew's vehicle would not start is unknown, but the car was, sometime after the accident, taken to the garage and remained there several days undergoing repairs." (Accent added.)

The testimony was not substantially different.

The Southern judgment arose from an accident on September 1, 1959 in Virginia. Riding in the car owned and driven by Ray Dalton, as just noted, she was injured when it collided with a truck belonging to Walter and Franklin Crigger. She brought suit on May 6, 1961 in a Virginia court against Ray Dalton and his father, William Matthew Dalton, as his principal; Walter E. Crigger and Franklin D. Crigger; and Harleysville Mutual Casualty Company, as her insurer under Virginia's Uninsured Motorist Act, Code 1950, § 38.1–381(b), as amended.

In that action, on motion of William Dalton after the plaintiff had rested, the Court dismissed her claim against him, on the ground that the evidence did not establish any liability upon William because the proof failed to show that Ray was driving as his father's agent. The case then proceeded to verdict on September 30, and final judgment on December 18, 1961, against the Criggers and Ray Dalton.

Lumbermens, the Criggers' insurer, and Harleysville, as Southern's insurer, applied for a writ of error to the Supreme Court of Appeals of Virginia. Error assigned was not only the finding against the Criggers but as well the release of William Dalton. The writ was denied.

Gertrude Southern then brought the instant action on October 29, 1963 in the District Court against Lumbermens, Harleysville and State Farm. As Lumbermens had no defense, on the Court's order it paid the entire judgment and thereupon impleaded Ray Dalton as a defendant.[1]

Lumbermens then sought contribution from State Farm as the alleged insurer of Ray Dalton under the policy State Farm had issued to William Dalton. A similar claim for contribution was made by Lumbermens against Harleysville as the uninsured-insurer of Southern since State Farm had denied coverage to Ray.

Having no insurance in his own name, Ray insisted that he was insured by State Farm under his father William's policy. His argument was grounded on two assertions: (1) he was driving as William's agent, and (2) the car he was driving was comprehended in the terms of William's policy extending him protection when using a "temporary substitute automobile". State Farm denied that its policy in any way embraced Ray.

Harleysville's defense was, first, that Ray was in fact insured by State Farm and thus he was not an uninsured motorist. Secondly, even if Ray was determined to be an uninsured motorist, Harleysville was still not liable for contribution because under the Uninsured Motorist Act the company's policy was not subject to claims of anyone save its policyholder, Gertrude Southern. Harleysville reiterated that her judgment had

already been satisfied in full by Lumbermens.

The District Court held that the dismissal of William Dalton from Southern's State court suit was a judgment-estoppel of Lumbermens to reexamine the question of Ray's agency of William Dalton. Hence, it declared that Ray was not protected by State Farm as William's agent. The Court also concluded that Ray's car was not brought under the State Farm policy as a "temporary substitute automobile".

Judgment was entered against Ray Dalton for one-half of the amount paid by Lumbermens to Gertrude Southern. Later, on disavowal by Lumbermens of any claim against Ray, at its request this judgment was vacated. Harleysville, as the uninsured-insurer, was absolved of all liability for contribution upon the ground that the insurance required by the Act did not include this responsibility.

Our decision—holding State Farm to be Ray's insurer—rests primarily upon our conclusion from the parties' fact stipulation that Ray's car was a "temporary substitute automobile" within William's policy. In this particular the policy provided:

"III. Definition of Insured.

(a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either * * *.

"IV. Automobile Defined, * * *.

1. The impleader purported to make Ray a defendant to the original action under F.R.Civ.P. 19. As this impleader or an order under Rule 13(h) would have destroyed the jurisdiction of the court—Ray like the plaintiff being a citizen of Virginia—we treat the procedure as perfected under Rule 14(a), an ancillary proceeding not requiring diversity of citizenship.

(a) * * *.

[E]xcept where stated to the contrary, the word 'automobile' means:

* * * * * *

(3) Temporary Substitute Automobile. Under coverages A [indemnification for liability for injury to others] * * * an automobile not owned by the named insured or his spouse if a resident of the same household, while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction * * *."

State Farm straight-forwardly concedes that if Ray's car on this occasion was a substitute automobile for William's, then his father's policy insured him.

■ William Dalton according to the stipulation had an understanding with certain persons, including Gertrude Southern, to transport them to work. Each of them agreed to pay him for this service. There was no such arrangement with Ray. Consequently, when William's car was disabled and he suggested that Ray "would *have to take his car* to work *and pick up these passengers*," William was employing Ray's car to perform William's undertaking. Furthermore, the exclusive reason for the use of Ray's car on the day in question was the temporary unavailability of William's. For the emergency, William in effect borrowed, and Ray loaned, the latter's car. Who was to drive was immaterial to William. The reality of substitution is accented by the circumstance that the two cars were kept in the same location and owned by members of the same household and family. True, Ray may have had his own purposes for the trip aside from his father's, but this does not detract from the fact that William was also using the car to do what he would have done with his own.

This interpretation of the policy term adheres to the terse exposition of the same phrase by Judge Soper in Pennsylvania Threshermen & Farmers Mut. Cas.

Co. v. Hartford Acc. & Indemnity Co., 310 F.2d 618, 622 (4 Cir. 1962):

"It is obviously the purpose of the ordinary substitute clause to cover an automobile temporarily used to the same extent as the automobile described in the policy but not to give the substitute automobile a wider coverage."

The provision refers to the vehicle and not to the operator. Hence, as Ray's automobile stood in the place and stead of William's, there is no need to inquire whether Ray operated the car as William's agent. Indeed, that is the previously noted concessum of State Farm.

However, if required to speak to the point, we think that the stipulation unequivocally confirms the agency. The agreed facts reveal that William enlisted Ray's help to carry out William's engagement—that Ray "would have to * * * pick up these passengers". Ray had no such duty. Whatever his own objects, Ray was driving at the direction of William in taking the passengers to work, for that was William's venture alone.

■ The ruling of the State court on the agency question did not preclude Lumbermens' relitigation of State Farm's coverage of Ray. It came at the end of the plaintiff Southern's case in chief on motion of William Dalton through State Farm to strike the evidence, the general equivalent of a directed verdict. On this issue State Farm, Lumbermens, Harleysville and Ray Dalton were not adversaries inter se. Moreover, the ruling was passed without an opportunity for Lumbermens, sub nomine Criggers, to be heard on it. Made in this stage of the trial, the ruling does not estop later exploration of the same issue among the defendants. Fowler v. American Federation of Tobacco Growers, Inc., 195 Va. 770, 80 S.E.2d 554, 557 (1954). The fairness and logic of this proposition are too obvious to be debatable.

■ Nor is this conclusion altered by the denial of the writ of error, notwith-

standing it had the effect of an affirmance. While the no-agency holding was there questioned by Lumbermens, rejection of the appeal was not an adjudication of the ruling's consequences upon the other defendants. It merely upheld the trial court's opinion that Gertrude Southern had not adduced evidence sufficient in law to prove that Ray was William's agent, a dispute between the injured claimant and William only. The appellate court would not essay decision on the implications of the ruling among the other defendants for no such question had been raised at nisi prius.

Against our finding of a substitution within the meaning of its policy, State Farm cites Tanner v. Pennsylvania Ins. Co., 226 F.2d 498 (6 Cir. 1955). The facts there were so divergent from those presently that the determinations in that case are hardly a precedent here. A brother of the insured while driving his own car on an errand in behalf of the insured, because of the disrepair of the latter's automobile, was involved in an accident. The brother had no insurance in his name. He had en route picked up his wife and children for a ride and the insured was not in the car. These factors disclose that the enterprise only fractionally and remotely touched the insured's interest. The distinguishing fact is that the mission executed by the brother was not to fulfill any prior undertaking of the insured. The Court concluded that the brother's car was not a substitute for the insured's.

Its reasoning was that the substitution provision contemplates "a car which was in the possession or under the control of the insured to the same extent and effect as the disabled car of the insured would have been except for the disablement." This is a narrower and more exacting test than that enunciated by Judge Soper, as quoted supra from Pennsylvania Threshermen & Farmers Mut. Cas. Co. v. Hartford Acc. & Indemnity Co., supra, 310 F.2d 618, 622—"an automobile temporarily used to the same extent as the automobile described in the policy". Because the Tanner case is so readily differentiated factually from ours, we do not further comment upon its definition of a substitute automobile. It is enough now to say, as we have previously, that measured by Judge Soper's standard Ray's was a substitute automobile.

■ Further defenses interposed by State Farm are the asserted failure of Ray and William Dalton to comply with the policy in respect to notice to and cooperation with the insurer. As the District Judge determined that Ray was not an insured, he did not pass upon these additional defenses. Our contrary conclusion renders State Farm answerable to Lumbermens for contribution only if these additional pleas are denied. Resolution of them should be made by the District Court. It may do so without a jury since the parties waived a jury trial of this case.

■ We agree with the District Court that no claim of contribution may be successfully pressed against Harleysville. Fundamentally, there was no uninsured motorist. Ray Dalton, as we have noted, was insured by State Farm. While he may at first have been an uninsured under the terms of the Virginia statute because of State Farm's immediate denial of coverage, this initial result simply accorded Southern a conditional claim against Harleysville. Code 1950, § 38.1–381(c), as amended. However, since Ray has been declared an insured, this contingent responsibility of Harleysville disappeared, the contingency never ripening. Merely because Harleysville's potential responsibility was once raised, it was not thereby unalterably and irrevocably established. Subsequent developments have laid that liability to rest.

■ In any event, under the Virginia uninsured motorist statute as construed by her courts, the indemnity furnished by the endorsement on her policy with Harleysville did not inure to the benefit of anyone other than Gertrude Southern. Nationwide Mut. Ins. Co. v. Harleysville Mutual Cas. Co., 203 Va. 600, 603, 125

S.E.2d 840, 843 (1962); Drewry v. State Farm Mutual Automobile Ins. Co., 204 Va. 231, 129 S.E.2d 681 (1963). Thus Harleysville is wholly exonerated, and will be unaffected by the outcome on remand of the District Court's consideration of State Farm's remaining defenses.

■ Finally, no merit is seen in the contention that Ray Dalton and Lumbermens were deprived of a jury trial in the District Court. There was a pretrial direction that the parties collaborate towards an agreement on the facts. A proviso was included in the order stating that if "there are any factual disputes they are to be listed and forwarded to the Court along with the stipulation". Subsequently a stipulation was filed but no factual controversies were afterwards brought to the Court's attention.

Besides, the District Judge found that a jury had not been sought in accordance with Rule 38(b) F.R.Civ.P., and said his "inclination" was not to allow a jury sua sponte. Id. 39(a). A final ruling was deferred until "after the stipulated facts are filed". The pretrial order also recited that if the stipulation showed "no need for the taking of evidence" the case would be set for argument. As it was thereafter argued without more, the effect was to deny the jury demanded. We think this procedure was unquestionably correct and altogether fair.

The judgment of the District Court will be affirmed except insofar as it held that Ray Dalton was not within the terms of State Farm's policy and that State Farm was not in any circumstances answerable for contribution to Lumbermens. In these respects it is reversed. The action will be remanded for further proceedings in the District Court not inconsistent with this opinion.

Affirmed in part, reversed in part, and remanded.

BOREMAN, Circuit Judge (concurring in part and dissenting in part).

The majority opinion holds that the District Court was in error in ruling that the dismissal of William Dalton from Southern's state court suit was a judgment-estoppel of Lumbermens to reexamine the question as to whether Ray Dalton was an agent of his father, William Dalton. On this point I agree with the majority holding that Lumbermens was not so estopped and for the same reasons. I further agree with the majority decision that no claim of contribution may be successfully pressed against Harleysville because the indemnity furnished by the uninsured motorist endorsement on Gertrude Southern's policy did not inure to the benefit of anyone other than Gertrude Southern.

My disagreement is with the majority view that Ray's car was covered under the State Farm policy as a "temporary substitute automobile." I agree with the court below that there was no such coverage.

My brothers base their determination that State Farm was Ray's insurer upon the stipulation filed by the parties. They reach their conclusion from the statement therein that William suggested that Ray "would *have to take his car* to work *and pick up these passengers.*" From this they hold that "William was employing Ray's car to perform William's undertaking," and that Ray's car was being used by his father as a "temporary substitute" for the father's car which was then disabled. I think they overlook or disregard certain portions of the stipulation from which it appears that, following the accident, William and Ray went to the office of State Farm's counsel and each gave a statement covering the details of the accident.[1] The stipulation provides: "These statements, or copies of the same, have agreed to be filed by Mr. Campbell [counsel for State Farm] and made a part of this stipulation." We are informed that the statement given by William is consistent in one particular re-

1. Each then stated that William was driving Ray's car at the time. They later changed their stories and stated that Ray was driving.

spect with his testimony at the trial. William put it this way:

"Ray was there at the time and was fixing to go to work. He said, well, we'll just take his, which anybody else would have done, I guess."

Again he testified: "His [Ray's] car was there and he said we'd take his."

At most, according to the stipulation, there was only a suggestion by William that Ray's car be used. As the District Judge pointed out, the record is silent as to whether William was to receive any financial benefit for the trip that day. The court below accepted and followed the case of Tanner v. Pennsylvania, etc., 226 F.2d 498 (6 Cir. 1955), as authority for the rule applied—that "substitute car" means a car which was in the possession or under the control of the insured to the same extent and effect as the disabled car of the insured would have been except for its disablement.

Of course, as the majority opinion notes, the Tanner case is factually different from the case at bar and is in that respect distinguishable. But the holding in *Tanner* has been interpreted as follows:

"Nor did coverage apply where the insured borrowed his brother's car but the accident occurred while it was being operated *by the owner for the benefit of the insured.*" (Emphasis added.) Appleman Insurance Law and Practice (Vol. 7, Sec. 4293.5 at page 96.)

My fellow judges make much of a statement which they quote from Judge Soper's opinion in Pennsylvania Threshermen & Farmers Mut. Cas. Ins. Co. v. Hartford Acc. & Indemnity Co., 310 F. 2d 618, 622 (4 Cir. 1962):

"It is obviously the purpose of the ordinary substitute clause to cover an automobile temporarily used to the same extent as the automobile described in the policy but not to give the substitute automobile a wider coverage."

This observation by Judge Soper was pure dictum and was volunteered following his statement *that there was no clause to be found in the policy there under consideration relating to the use of a "substitute automobile."* The crucial question here raised was not involved in that case and the facts there bore no similarity to the facts in the instant case.

I find it very difficult to reject the District Judge's findings and ultimate conclusions. He characterized the use of Ray's own car as nothing more than an accommodation to his father, William, resulting from the father and son relationship. Their trip was being made because they both worked at the same place and they were scheduled to reach their jobs at the same time. I would attach little importance to William's alleged "contract" to carry other fellow workers to their place of employment. Such an agreement wtih "riders" is generally a very loose sort of an arrangement, is so recognized, and would provide a very flimsy basis for a finding that William was *contractually bound* to furnish them transportation. There is no evidence that their route of travel was dictated by any pre-existing obligation to transport passengers or that they took other than the most direct route from their home to the plant. So far as disclosed their route was of necessity dictated by the Daltons' desire to get to their place of employment on time. There is no showing that William exercised or attempted to exercise even the slightest degree of control or direction over the operation by Ray of Ray's own automobile. Ray simply offered to use his car for the trip as a matter of accommodation. It was *his* undertaking on that particular occasion and, under the circumstances, I cannot accept the conclusion that it was William who was using Ray's car. I agree with the District Judge's observation that the very nature of filial and paternal relationships encourages "such accommodations. A contrary behavior pattern would be, I think, the exception."

The burden of proof was on Lumbermens Mutual to show that Ray's car was a "temporary substitute automobile" within the meaning and intendment of the State Farm policy. In my opinion Lumbermens failed to meet its burden. I would affirm the judgment below as I think the result reached by the court was eminently correct.