339 So.2d 40 (1976)
Thomas J. MILLER, Plaintiff-Appellant-Appellee,
v.
Dutriel Michael KEATING et al., Defendants-Appellants-Appellees.
No. 5625.
Court of Appeal of Louisiana, Third Circuit.
October 21, 1976.
Rehearing Denied November 30, 1976.
Writ Granted February 3, 1977.
*41 John A. Jeansonne, Jr., Lafayette, for Kustom Homes, Inc. and Hartford Acc. & Indem. Co.
Allen, Gooch & Bourgeois, Ltd. by Raymond M. Allen, Lafayette, for plaintiff-appellee.
Olivier & Brinkhaus by John L. Olivier, Sunset, Guilbeau & Sullivan by Thomas E. Guilbeau, Lafayette, for defendant-appellee.
Debaillon & Miller by Roderick L. Miller, Lafayette, for plaintiff-appellant-appellee.
Kleinpeter & Nevils by Robert L. Kleinpeter, Baton Rouge, for defendant-appellant-appellee.
Before HOOD, MILLER and WATSON, JJ.
HOOD, Judge.
Plaintiff, Thomas, J. Miller, claims damages for personal injuries sustained by him as the result of a battery committed on his person. The defendants are Dutriel Michael Keating, Johnny Lee Howren, James Guillet, Kustom Homes, Inc., and Hartford Accident and Indemnity Company. The case was tried by jury, with the result that a verdict was rendered in favor of plaintiff and against defendants, Keating, Howren, Guillet and Kustom Homes, for the sum of $25,500.00. Hartford was found to be not liable. Judgment was rendered and signed by the trial judge in accordance with that verdict.
Appeals were perfected by plaintiff Miller, and by defendants Guillet and Kustom Homes.
The principal questions presented are: (1) Did defendant Guillet assist in the commission of the battery? (2) Was the battery committed by employees of Kustom Homes while in the course of their employment? (3) Does the liability policy issued by Hartford provide coverage for the tortious acts committed by any other defendant? (4) Is the amount of the award excessive or inadequate? (5) Is the judgment consistent with the jury verdict?
Plaintiff Miller was seriously injured as the result of a battery committed on him near his home in Lafayette Parish, at about 10:00 P.M., on April 23, 1973. He instituted this suit on April 23, 1974, alleging that the battery was committed by defendants Keating, Howren and Guillet pursuant to a conspiracy entered into by them, and that defendants *42 inflicted the injury on him during the course of their employment by Kustom Homes, Inc.
The trial was completed and the jury verdict was rendered on December 15, 1975. The judgment appealed from was signed on January 29, 1976. The jury obviously found that defendants Keating, Howren and Guillet committed the battery, or that they at least assisted or encouraged in the commission of it, since all three of those defendants were held to be liable in solido for the damages sustained by plaintiff.
Neither Keating nor Howren appealed and neither of them answered the appeal taken by plaintiff. The judgment thus is final as to those defendants.
The evidence establishes that in 1969 or 1970, plaintiff Miller and defendant Keating agreed to go into the construction business together. They formed Kustom Homes, Inc., for that purpose, with Miller and Keating owning a majority of the stock in that corporation. Keating served as president and manager of the company, and Miller served as vice-president and general superintendent in charge of construction. The corporation began constructing and selling residential buildings shortly after it was formed, and it was still engaged in that business when plaintiff was injured.
Several months prior to the time plaintiff was injured, Keating employed defendants Howren and Guillet to work as carpenter's helpers for Kustom Homes, and those defendants were employees of that corporation on the day the above described battery was committed.
In January, 1973, Miller severed his connection with Kustom Homes and he accepted a position with another construction firm. Keating became displeased or angry with Miller because of his act in leaving Kustom Homes, Particularly in view of the fact that the corporation was heavily in debt at that time. Shortly after Miller quit working for Kustom Homes, Keating informed defendants Howren and Guillet that he wanted to kill or to "have something done to" plaintiff Miller, and he solicited their assistance in accomplishing that purpose. Although Howren and Guillet deny that they agreed to assist Keating, the evidence shows that they did assist him in an attempt to at least seriously injure plaintiff. Keating promised both of the other defendants some land if they helped him carry out his plan.
After Keating solicited the help of Howren and Guillet, the latter made several trips together in an attempt to locate Miller for Keating. About one week before the above battery was committed, Howren and Guillet located plaintiff and they conspired to commit a battery on him at that time. They went to Miller's home for that purpose, but their attempt was thwarted by the fact that Miller arrived at his home sooner than defendants expected him to get there and someone else was with him when he arrived.
About noon on April 23, 1973, Keating met with Howren and Guillet, and at that time they conspired to ambush and to assault plaintiff when he arrived at his home late that evening. Pursuant to that plan, Howren and Guillet went to Miller's home about 10:00 P.M. on that date in a pick-up truct being driven by Guillet, and shortly thereafter Keating met them there. Guillet parked his truck across the street from Miller's home and remained in it while Keating and Howren went to a point near the entrance to plaintiff's home and concealed themselves behind some bushes there. Keating was armed with a piece of iron pipe. Shortly thereafter Miller arrived and started to walk from his parked automobile toward his home. When he reached the bushes concealing the two defendants, Keating and Howren assaulted and struck Miller repeatedly over the head with the iron pipe, causing serious injuries. The evidence is not clear as to whether Keating or Howren actually struck the blows. Both participated in the assault, however, and Guillet was in his truck across the street when the battery was committed. Miller was left unconscious on the ground.
Immediately after the battery was committed, Howren emerged from the bushes and Guillet promptly drove the truck forward *43 to pick him up and return to Lafayette, all in accordance with their agreed plan. At Howren's request, Guillet then stopped the truck and went into the bushes with Howren to help him put Miller's body in the truck and take it to some other place. Guillet saw plaintiff lying on the ground and discovered that he was still alive. He then got scared, suggested that they "get out of here," and he and Howren then left the scene in Guillet's truck. Keating left in another vehicle, and shortly thereafter the three defendants met at Keating's home where they were informed by Keating to report to work the next day just as though nothing had happened. Howren and Guillet threw the iron pipe in the Vermilion River, and they burned some other incriminating evidence.

Liability of James Guillet
Defendant Guillet argues that the jury and the trial judge erred in their obvious conclusion that he participated in the battery. He contends that he is not liable in damages because he did not commit the battery and he did not intend to harm plaintiff. He takes the position that he was "merely a victim of a series of unfortunate circumstances."
LSA-C.C. art. 2324 provides that "He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act."
The words "assists" and "encourages," as used in Article 2324 of the Civil Code, contemplate acts performed pursuant to a conspiracy which cause injury or damage. Buras v. Machella, 172 La. 580, 134 So. 751 (1931); Tabb v. Norred, 277 So.2d 223 (La.App. 3 Cir. 1973); Rush v. Town of Farmerville, 156 La. 857, 101 So. 243 (1924).
If a conspiracy is conceived and executed and a private injury results, the person injured has a cause of action against all of the conspirators. The action is for damages caused by acts committed pursuant to a formed conspiracy, and all of the conspirators will be regarded as having assisted or encouraged in the performance of those acts. Tabb v. Norred, supra, and cases cited therein.
In the instant suit Guillet admitted that "to an extent" he participated in this battery and that he knew what was going on while Miller was being ambushed and injured. He did not admit having entered into a conspiracy with the other defendants, but he stated that he learned soon after Miller left Kustom Homes and Keating and Howren intended to kill Miller, and he went along with them and assisted in carrying out that plan from the time he first learned of it until the battery was committed. Guillet explained that initially he assisted in the plan to kill plaintiff because he "didn't believe they were going to do it," and that he "didn't want to believe what was going on." He stated, however, that "when I finally realized what was happening, I was too scared to try and get out of it." When asked whether he knew what was going to happen when he, Keating and Howren met at Miller's home immediately before the assault occurred, he stated, "I was afraid that they were going to kill him." He nevertheless did not protest, and he continued to participate in the act.
We find that Guillet at least tacitly entered into a conspiracy with Keating and Howren to injure plaintiff, that thereafter he assisted them in committing a battery on Miller pursuant to that conspiracy, and that the latter sustained severe injuries as a result of that battery.
We conclude, therefore, that defendant Guillet assisted or encouraged in the commission of the battery on plaintiff Miller, and that he is answerable, in solido, with the other defendants for the damage caused by that act. There is no error in that part of the verdict which finds Guillet to be liable, therefore, and the judgment appealed from will be affirmed insofar as it decrees Guillet to be liable in solido with the other defendants.

Liability of Kustom Homes, Inc.
Defendant Kustom Homes contends that the tort feasors, Keating, Howren or Guillet, *44 were not acting within the scope of their employment in committing the battery, and that the jury and trial judge thus erred in finding that Kustom Homes, the employer, is liable.
An employer is liable for the damage occasioned by the tortious conduct of his employees, if the latter at the time are acting within the scope of their employment, or "in the exercise of the functions in which they are employed." LSA-C.C. art. 2320; LeBrane v. Lewis, 292 So.2d 216 (La. 1974); Babineaux v. Lavergne, 321 So.2d 401 (La.App. 3 Cir. 1975).
Whether an employee was acting within the course and scope of his employment must be decided on the facts of each case. The general test to be applied is whether the employee was performing some function for his employer and for which he was employed. Babineaux v. Lavergne, supra.
In LeBrane v. Lewis, supra, our Supreme Court held the employer to be liable where a supervisory employee stabbed a former co-employee in a dispute concerning the latter's discharge by the supervisor. The court considered the following factors in determining that the tort feasor was acting within the scope of his employment: (1) Whether the tortious act was primarily employment-rooted; (2) whether the violence was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment.
We have applied the above tests to the facts in the instant suit, and have concluded that the tortious acts committed by Keating, Howren and Guillet were not committed during the course and scope of their employment, or in the exercise of the functions in which they were employed.
At the trial Keating denied that he entered into a conspiracy to injure Miller, and he denied that he was present at the scene when the battery was committed. He conceded that he was "hurt" when Miller severed his connection with Kustom Homes, that shortly after that occurred Howren asked him if he would like for Howren to "take care of Tommy Miller," and that Keating replied, "Yeah, as long as you make it look like an accident." He stated, however, that this last remark was made in a joking manner, and that nothing more was said on that subject to either Howren or Guillet.
Howren testified that he participated in the conspiracy and in the battery because Keating was the boss and he told Howren to do so, that he owed Keating $2,500.00 and was unable to pay it, that Keating promised to give him some land and some money if he helped in the assault, and that he was afraid of Keating. He also testified that Keating told him and Guillet that Keating had taken out a life insurance policy on Miller, and that he wanted Miller killed so he could collect the proceeds of that policy.
Keating and Howren differed as to how the latter became indebted to Keating for $2,500.00. Under either version of the facts, however, we find that the obligation was personal between those two parties and that it had no connection with their employment by Kustom Homes.
The evidence shows that at the time Miller severed his relations with Kustom Homes, there was in existence a life insurance policy insuring his life for $25,000.00, with Kustom Homes being one of the beneficiaries. After Miller left the corporation, Kustom Homes obtained another insurance policy insuring his life for $75,000.00, with Kustom Homes also being named as one of the beneficiaries. Both of these policies were in effect at the time the battery was committed. The articles of incorporation of Kustom Homes, Inc., provide that in the event of the death of a shareholder the surviving heirs must offer to the corporation all of the shares of stock owned by the decedent, at a specified price. Plaintiff argues that defendants were exercising "functions in which they were employed" in attempting to take the life of Miller, since Kustom Homes was a beneficiary under the above policies. Kustom Homes argues, on *45 the other hand, that the assault was committed for the personal advantage of Keating, since he was a major stockholder in the corporation and would benefit personally and indirectly by any payment of insurance benefits to that company.
We find no merit to the argument that the defendants were exercising functions in which they were employed by attempting to take the life of Miller. The evidence does not show that the collection of the proceeds of those policies constituted a motive for the assault. Assuming that that was a motive, however, we believe that the act was committed solely for the personal benefit of one or more of the defendants, it was not done for the benefit of the corporation, it did not constitute one of the functions in which they were employed, and defendants were not acting within the scope of their employment.
There is nothing in Guillet's testimony which tends to show a connection between his employment, or that of any other defendant, and the violence which was done to Miller.
The record does not show, therefore, that the tortious act committed by Keating, Howren and Guillet was employment-rooted.
Guillet was employed to work as a carpenter's helper for Kustom Homes, and the latter was engaged in the construction business. The battery committed on Miller was not reasonably incidental to the performance of the duties of any of the employees who participated in that act.
The battery occurred at least six miles from any premises owned or occupied by the employer, Kustom Homes, and about that distance from any work which was being performed by that corporation. The three employees who participated in the battery completed their day's work for Kustom Homes about 4:00 P.M. on April 23, 1973. Howren and Guillet returned to the office of the company at about 6:00 P.M., and assisted in moving some furniture for about two hours. They completed that work and left the office at 8:00 o'clock, however, and the battery involved here occurred two hours later, at about 10:00 P.M. on that date. It thus did not occur on the employer's premises or during the defendants' hours of employment.
The evidence shows that none of those defendants who participated in the battery was acting in the scope of his employment by Kustom Homes when the act was committed. There is no respondeat superior liability on the part of Kustom Homes, therefore, and we find that the trial court erred in rendering judgment against that defendant. The judgment appealed from must be reversed insofar as it condemns Kustom Homes to pay damages to plaintiff.

Liability of Hartford Accident & Indemnity Co.
The policy issued by Hartford to Kustom Homes provides, under the "Comprehensive General Liability Insurance Coverage Part," that the company will pay on behalf of the insured "all sums which the insured shall become legally obligated to pay as damages" because of bodily injury caused by an occurrence. We have determined that the insured, Kustom Homes, is not legally obligated to pay any damages to plaintiff. The insurer thus is not liable to plaintiff under the general liability insurance provisions of that policy.
Plaintiff contends, however, that the pick-up truck used by Guillet and Howren on the night the battery was committed was insured under the automobile liability provisions of the above policy. The policy provides, under the "Comprehensive Automobile Liability Insurance Coverage Part," that the company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury caused by an occurrence and "arising out of the ownership, maintenance or use, including loading and unloading, of any automobile. . . ."
Plaintiff's argument is that the injuries which he sustained on the night of April 23, 1973, arose out of the "use" of the vehicle which Guillet was driving at that time, since the truck was used to transport some *46 of the conspirators to and from the scene of the battery, and the two-way radio in that vehicle allowed direct communication between all of the co-conspirators. He takes the position that Guillet, the driver of the truck, was an "insured" under the policy, and that the insurer, Hartford, thus is liable for the damages sustained by plaintiff.
In Speziale v. Kohnke, 194 So.2d 485 (La.App. 4 Cir. 1967), plaintiffs claimed damages for injuries which they sustained when some fireworks were thrown at them by the occupants of a moving automobile. The policy in that case, as does the policy in the instant suit, obliged the insurer to pay on behalf of the insured all sums which the latter shall become legally obligated to pay as damages for injuries "arising out of the ownership, maintenance or use" of the insured automobile. The court held that the occurrence did not arise out of the "use" of that automobile, as reasonably contemplated by the language used in the policy, and that the insurer was thus not liable. The court said:
". . . it is obvious that this case does not involve an `aring out of the use of an automobile' as reasonably contemplated by that clause. That the circumstances here are not within the clause is accentuated by the fact that the act of throwing a firecracker was a voluntary, deliberate act on the part of the automobile passenger. This factor, along with the entire set of circumstances, removes the connexity of the incident with the use of an automobile to the realm of insignificance."
In our opinion, the rule applied in Speziale is applicable here. The battery committed in the present suit was a voluntary, deliberate act on the part of the driver and occupant of the insured truck. The connection between the use of the truck and that voluntary act of violence is so remote and insignificant that it cannot reasonably be said that plaintiff's injury arose out of the use of that vehicle.
We conclude that the injuries sustained by plaintiff in the instant suit did not arise out of the "use" of the insured truck which was driven by Guillet on the night of April 23, 1973. The policy issued by Hartford, therefore, provides no coverage for plaintiff's claim. The judgment appealed from will be affirmed insofar as it rejects plaintiff's demands against Hartford.

Quantum
Plaintiff suffered severe head injuries as the result of the battery. He received approximately five blows to the top and sides of his head with a hard, blunt instrument. The blows caused him to suffer several large cuts, consisting of a "large cut through the left ear which extended almost into the canal to the opening," two "large cuts on the scalp behind the left ear," one large cut on the "back of the head," and a "smaller cut but of substantial size on the right side of the head." Many stitches were required to repair these lacerations. X-rays revealed that plaintiff sustained two fractures, one on his skull behind the left ear over the mastoid, and the other being a fracture of the mandible. He sustained a brain concussion, resulting in temporary amnesia, headaches and dizziness. As a result of the fracture to the mandible, his ability to open his mouth has been reduced to at least a quarter to a third of normal, it affects his ability to speak and to chew, and it causes a popping noise and pain when he moves his jaws. The doctors were unable to determine whether the condition of the mandible will be permanent. He has suffered a ten percent permanent loss of hearing in the left ear. The scars from the cuts are permanent and are disfiguring, although some of them should be covered or concealed by his hair.
Miller was hospitalized for approximately thirteen days, including several days in the intensive care unit of the Lafayette General Hospital, during which time he required blood transfusions and for a while he was listed as being in critical condition.
The jury awarded plaintiff damages in the amount of $25,500.00, which included special as well as general damages. The evidence indicates that he sustained medical expenses amounting to approximately *47 $2,000.00. He suffered no loss of wages, since his employer continued to pay him his full salary during his period of disability. The award of general damages thus was in the amount of about $23,500.00.
We have decided that the award of general damages made to plaintiff is within the range of the much discretion which is vested in the trial court, and that it should not be disturbed.

Provisions of Judgment
The decree signed by the trial judge recites that plaintiff is entitled to recover damages from defendants "as a result of the intentional battery committed upon the plaintiff by or at the instance of the aforesaid defendant."
The defendants who appealed contend that the judgment should be amended to eliminate the word "intentional" from it. They argue that the issue of whether the act was intentional was not submitted to the jury, that the jury made no finding as to that issue and that the trial judge erred in including the term "intentional" in his formal judgment.
We find no error in the trial judge's action in including "intentional" in the decree. The evidence shows, and we have found, that defendants entered into a conspiracy to commit a battery on plaintiff, that a battery actually was committed pursuant to that conspiracy, and that plaintiff sustained injuries as the result of that battery. The committing of such an injury must be intentional. It is inconceivable that a battery committed pursuant to a conspiracy and under the circumstances shown by the evidence to exist in this case, could be unintentional.
Our conclusion is that the trial judge did not err in including the words "as a result of the intentional battery committed upon the plaintiff" in the decree.
For the reasons herein set out, the judgment appealed from is amended to eliminate Kustom Homes, Inc., as one of the defendants cast in judgment, and to decree instead that all claims asserted against Kustom Homes, Inc., by plaintiff are hereby dismissed. In all other respects the judgment appealed from is affirmed.
One-half the costs of this appeal are assessed to plaintiff-appellant, and the remaining one-half of those costs are assessed to James Guillet, defendant-appellant.
AMENDED and AFFIRMED.