# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**JOHN E. BIRK**
**JAMES E. STOLTZ**
Birk & Birk
Jasper, Indiana

ATTORNEYS FOR APPELLEES:

**D. TIMOTHY BORN**
**SHAWN M. SULLIVAN**
Terrell, Baugh, Salmon & Born, LLP
Evansville, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARK GASSER, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 19A05-1108-PL-419 |
| | ) | |
| LESA B. DOWNING, AUTO-OWNERS | ) | |
| INSURANCE COMPANY, and PROPERTY | ) | |
| OWNERS INSURANCE COMPANY, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE DUBOIS SUPERIOR COURT
The Honorable William E. Weikert, Judge
Cause No. 19C01-0908-PL-344

**May 25, 2012**

**OPINION – FOR PUBLICATION**

**MAY, Judge**

Mark Gasser was injured in an automobile accident while a friend was driving him to a golf course. He sued Auto-Owners Insurance Co. for underinsured motorist coverage, claiming the car in which he was a passenger was a temporary substitute for his own vehicle. The trial court granted Auto-Owners' motion for summary judgment and denied Gasser's. We affirm.[1]

## FACTS AND PROCEDURAL HISTORY

On December 27, 2008, Gasser was scheduled to meet three friends for a Saturday morning tee time. As he prepared to leave home, he discovered the battery was dead in his Toyota pickup truck. That was the only vehicle available to him because the antique cars at his residence were not running and his girlfriend was driving his GMC Yukon. He did not call his girlfriend because he did not know where she was or how long it might take her to return. Instead, he called one of the people in his golfing party, Rex Kamman, and asked Kamman to pick him up. Gasser and Kamman were on the way to the golf course, with Kamman driving, when Kamman's car was involved in a collision.

Gasser's business, Huntingburg Machine Works ("HMW"), owned Gasser's truck and other vehicles, and Auto-Owners insured them. The HMW policy applies "to an **automobile you** do not[2] own which is temporarily used as a substitute for **your automobile**. **Your**

---

[1] We heard oral argument April 26, 2012, in Mount Vernon, Indiana as part of the Posey Circuit Court's Law Day observance. We thank the court for its hospitality and commend counsel on the quality of their advocacy.

[2] In its Statement of Facts, Auto-Owners quotes this provision, but leaves out the words "do not." (Br. of Appellees at 9.)

**automobile** must be out of use because of breakdown, repair, servicing, loss or destruction."

(App. at 172) (footnote added). "Substitute" is not defined.

## DISCUSSION AND DECISION

When reviewing a summary judgment, we apply the same standard as does the trial court. *Lacy-McKinney v. Taylor Bean & Whitaker Mortg. Corp.*, 937 N.E.2d 853, 858 (Ind. Ct. App. 2010). Summary judgment is appropriate if the pleadings and evidence demonstrate there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). We construe the pleadings, affidavits, and designated evidence in the light most favorable to the non-moving party, and the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Lacy-McKinney*, 937 N.E.2d at 858-59. Because a summary judgment comes to us clothed with a presumption of validity, the appellant must persuade us that error occurred. *Id.* at 859. If the judgment can be sustained on any theory or basis in the record, we must affirm. *Id.* Still, we must carefully review a summary judgment to ensure a party was not improperly denied his or her day in court. *Id.*

Interpretation of an insurance policy, as with other contracts, is primarily a question of law for the court, even if the policy contains an ambiguity needing resolution. *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind. 1992). It is only where a contract is ambiguous and its interpretation requires extrinsic evidence that the fact finder must determine the facts on which the contract rests. *Id.* If policy language is clear and unambiguous, it should be given

3

its plain and ordinary meaning. *Id*. If there is an ambiguity, the policy should be interpreted most favorably to the insured. *Id*. "It should be construed to further the policy's basic purpose of indemnity." *Id*.

Policy terms are interpreted from the perspective of an ordinary policyholder of average intelligence. *Westfield Cos. v. Knapp*, 804 N.E.2d 1270, 1273-74 (Ind. Ct. App. 2004), *reh'g denied, trans. denied*. If reasonably intelligent persons may honestly differ as to the meaning of the policy language, the policy is ambiguous. *Id.* Terms in a contract are given their usual and common meaning unless, from the contract, it can be determined some other meaning was intended. *Id.*

Kamman's car was not a "temporary substitute" for purposes of the Auto Owners policy because it was being used as a favor or friendly accommodation, not to fulfill a legal or contractual obligation Gasser had.[3]

In *Deadwiler v. Chicago Motor Club Ins. Co.*, 603 N.E.2d 1365 (Ind. Ct. App. 1992), *trans. denied*, we addressed when a vehicle is a "temporary substitute." There, a policy provision defined "your covered auto" as: "Any auto or trailer you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use" because of breakdown or repair. *Id*. at 1366 n.1. *Deadwiler* addressed this question as one of first impression in Indiana, and it does not appear our courts have

---

[3] As we find the Kamman's vehicle was not a temporary substitute because Gasser had no legal or contractual obligation, we need not address Auto-Owners' alternative argument Gasser, as a mere passenger, was not "using" Kamman's vehicle.

4

addressed it at any length since.

In *Deadwiler* we noted "[t]he well recognized intent of a 'temporary substitute' clause is not to narrow the coverage of an insurance policy, but to provide the insured with continuous coverage for one operating vehicle on one policy." *Id.* at 1367. We reviewed authorities from various jurisdictions including a line of decisions flowing from *Tanner v. Pennsylvania Threshermen & F.M.C. Ins. Co.,* 226 F.2d 498 (6th Cir. 1955). The *Tanner* court found a substitute vehicle was one that was "in the possession or under the control of the insured to the same extent and effect as the disabled car of the insured would have been except for its disablement." *Id*. at 500. We followed *Tanner*.

In *Tanner*, brothers Mike and Louis owned separate cafes in the same city. Mike's car, which was covered by insurance, was in the shop for repairs. Louis helped Mike get his car to the shop and took Mike back to his cafe. On arriving there, Mike realized that he did not have any beef at his cafe. He asked Louis to go to his cafe and bring back some beef. Louis agreed. He went home to pick up his wife and children, then headed for his cafe to pick up the beef. On his way, he was involved in an auto accident.

Louis tried to obtain coverage under Mike's insurance policy on the premise Louis's car was a temporary substitute vehicle. The district court found it was not, because Louis's errand was "in the nature of a friendly or brotherly accommodation," *id*., and the Sixth Circuit affirmed.

5

We noted in *Deadwiler* that courts applying the *Tanner* rule have required that for a vehicle to be a "temporary substitute," it must be under the control of the insured, or the insured's designee. 603 N.E.2d at 1369. To "designate" has been defined as "to indicate, select, appoint, nominate or set apart for a purpose or duty, as to designate an officer for a command." *Id*. (quoting Black's Law Dictionary at 402 (5th ed. 1979)). "Designation in the present context necessarily implies *the existence of a duty or obligation owed by designator*." *Id*. (emphasis added).

In *Deadwiler*, Gena Deadwiler was asked by her mother to check on Gena's sister. Her mother's car was insured by Chicago Motor Club, and Gena's car was not insured. On her way back from checking on her sister, Gena's car was involved in an accident. Gena claimed her car was a "temporary substitute vehicle" covered under her mother's policy. We determined it was not: "Dorothy had neither possession nor control over Gena's car. Dorothy requested that Gena check on her sister. No designation occurred. Therefore, the car was not entitled to temporary substitute status." *Id*.

We noted, in the context of the *Deadwiler* facts, "a prior undertaking on the part of the insured has been noted as a key factor in differentiating those cases in which a car is found to be a temporary substitute, from those cases in which the car is found not to be a temporary substitute." *Id*. at 1368. We characterized such a prior undertaking as one to "fulfill a previous legal or contractual obligation" of the insured. *Id*. at 1369.

6

In reaching that decision, we examined a number of decisions from other jurisdictions. In *Babineaux v. Lavergne,* 321 So.2d 401 (La. Ct. App. 1975), an employer asked an employee to deliver paychecks for the employer because the employer's car had broken down. The employee took on the task "strictly as a personal favor." *Id.* at 404. Therefore, the employee's car was not a "temporary substitute" for the employer's vehicle when the employee was involved in a car accident while driving to a relative's house before delivering the checks.

Similarly, in *Carnes v. Schram,* 440 N.W.2d 451 (Neb. 1989), a truck used to pick up hogs for Schram was not a temporary substitute vehicle entitled to coverage under Schram's policy. The "legal and contractual compulsion regarding the use of the vehicles in [decisions finding a vehicle was a temporary substitute] is replaced in the instant case by a simple act of courteous reciprocity." *Id.* at 456.

There was, by contrast, a legal or contractual undertaking in *Roberts v. Gonzalez,* 495 F.Supp. 1310 (D. V.I. 1980). Caribbean Airlines was scheduled to fly passengers between San Juan and Saint Thomas. Its plane malfunctioned, so Caribbean transferred the passengers to a Conquest Airways flight. The Conquest plane crashed, and the district court found the Conquest plane was a temporary substitute for a Caribbean plane. It distinguished *Tanner* based on the fact the errand in *Tanner* "was a spur of the moment accommodation; it was not to fulfill any prior undertaking of the insured's." *Id.* at 1321.

7

Similarly, in *Fulton v. Woodford,* 498 P.2d 564 (Ariz. Ct. App. 1972), Sanner contracted with Conway to provide trucks for the delivery of dirt. Conway hired Fulton to provide additional trucks, and Fulton in turn hired Patterson for even more trucks. Patterson was involved in an accident. The court found Patterson's truck was a temporary substitute for trucks owned by Fulton, such that Fulton's policy covered Patterson's truck. The *Fulton* court distinguished *Tanner* because "the errand performed [in *Tanner*] was no more than a brotherly accommodation and was not for the purpose of fulfilling a prior undertaking of his brother." *Id.* at 570.

Applying those cases to the facts in *Deadwiler*, we determined Gena's actions could be better characterized as a favor to her mother than as fulfillment of a prior contractual or legal obligation her mother owed:

> While Dorothy may have felt some moral or maternal obligation to check on the welfare of her daughter, her obligation did not rise to the level of the contractual obligations present in *Lumbermens, Roberts,* or *Fulton.* Gena's checking on her sister did not fulfill a previous legal or contractual obligation which her mother owed, it constituted a favor to her mother, and nothing more.

603 N.E.2d at 1369.

Gasser's ride to the golf course similarly is best described as a "favor" by Kamman, and not a "fulfillment of a prior contractual or legal obligation." Auto-Owners therefore was entitled to summary judgment, and we affirm.

Affirmed.

BAKER, J., and BAILEY, J., concur.

8